Filed 6/9/16  P. v. Garcia CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>      v.<br><br>JOHNNY GARCIA,<br><br>    Defendant and Appellant. | G052531<br><br>(Super. Ct. No. 14CF0026)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, David A. Hoffer, Judge.  Affirmed.

Jason L. Jones, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

\*        \*        \*

Defendant Johnny Garcia was convicted of 14 criminal charges. He was sentenced to a total of 18 years eight months in prison.

We appointed counsel to represent defendant on appeal. Appointed counsel filed a brief pursuant to *People v. Wende* (1979) 25 Cal.3d 436 (*Wende*) and *Anders v. California* (1967) 386 U.S. 738 (*Anders*), setting forth the facts of the case, raising no issues, and requesting that we independently review the entire record. We provided defendant 30 days to file written argument on his own behalf; that time has passed and no supplemental brief has been filed.

We have examined the entire record and appointed appellate counsel's *Wende/Anders* brief; we find no reasonably arguable issue. (*Wende*, *supra*, 25 Cal.3d 436.) We therefore affirm.


BACKGROUND

On October 8, 2013, Elaine Aguero, defendant's girlfriend, went to the emergency room with a broken nose and facial lacerations. She initially told a nurse that she had been attacked by one Hispanic girl. When questioned by a police officer, Aguero stated defendant had punched her in the nose during an argument. At trial, Aguero reverted to the first story about being attacked by a girl, and claimed she had told the police officer the other story to avoid being arrested herself and to get back at defendant, with whom she was angry.

On December 23, 2013, Aguero was in the passenger seat of a friend's car, when the friend began to argue with the driver of a minivan parked nearby. The driver of the minivan drove into the driver's side door of the car, then struck a wall. Aguero told the responding police officer that defendant was the driver of the minivan; at trial, she claimed she was not able to identify the driver. (The minivan had been stolen 12 days before this incident.)

2

Defendant's aunt had borrowed a red Dodge Ram pickup truck from a friend. About 6:45 a.m. on December 31, 2013, she noticed the truck was missing. That same day, Aguero saw defendant in a red Dodge Ram pickup truck outside a friend's house. Aguero recognized the truck as the one defendant's aunt had been using.

The next day, around 3:00 p.m., Aguero called 911, stating defendant was trying to enter her home; Aguero's mother, grandmother, and daughters were all in the home at the time. During the 911 call, Aguero told the dispatcher her ex-boyfriend was threatening to beat her, and said, "he's done that before. He just came in the house, and I'm really, really scared." Aguero screamed, "he's opening the door. He's opening the door"; "oh, my God"; and "he's going to kill me." Aguero initially told the dispatcher the door was locked, but then said, "no, he came in. He's inside the home. He's inside the house. The window was open, and he came in so I ran into my mom's room. And I'm locked in my mom's room, but he's trying to break in." Aguero also told the dispatcher, "nobody wants him here. He just always does this. I've had incidents with him. He's tried running me over like literally a few weeks ago." At trial, Aguero testified she had let defendant into the house to get some of his property. After defendant had left, Aguero discovered her backpack and an iron were gone and her purse had been emptied and money had been taken from it.

Defendant returned to Aguero's house about midnight, and contacted her through her bedroom window. Both defendant and Aguero were yelling, and defendant threw something at the window and broke it. Defendant was arrested and released on bond subject to a protective order prohibiting him from contacting Aguero.

Following defendant's preliminary hearing, Aguero sent a text message to defendant's brother, in which she stated she had lied in court for defendant, and complained that defendant was not sorry for breaking Aguero's nose or trying to run her over.

3

The day after defendant was released from jail, Aguero called the police and reported defendant had come to her house, and had left after they argued through the screen door. Aguero told the police that defendant "didn't do anything this time," but had shown her that he had removed his GPS ankle bracelet.

Around 7:45 a.m. on March 5, 2014, the owner of a black Hyundai Accent noticed the car was missing. The owner later received a citation in the mail with a photograph dated March 5; the photograph showed defendant driving the car.

On March 6, Aguero saw a black car behind her after she had dropped off her children at school. When the car honked at her, she noticed defendant was driving it. Defendant followed Aguero to her friend's house. Defendant and Aguero argued outside the house, and Aguero told defendant to leave her alone. Aguero called the police and told the responding officer that defendant had pulled her hair and bit her on the shoulder when she walked away; at trial, she testified she simply walked away.

Defendant was charged in an information with assault with force likely to produce great bodily injury (Pen. Code, § 245, subd. (a)(4)); two counts of aggravated assault (*id.*, § 245, subd. (a)(1)); three counts of unlawful taking of a vehicle (Veh. Code, § 10851, subd. (a)); hit and run with property damage (*id.*, § 20002, subd. (a)); first degree residential burglary of an inhabited dwelling (Pen. Code, §§ 459, 460, subd. (a)); petty theft (*id.*, §§ 484, subd. (a), 488); vandalism under $400 (*id.*, § 594, subds. (a) & (b)(2)(A)); domestic battery causing injury with a prior conviction for violence (*id.*, § 273.5, subds. (a) & (f)(1)); receipt of stolen property (*id.*, § 496d, subd. (a)); and two counts of violation of a protective order (*id.*, § 166, subd. (c)(1)). The information alleged that a nonaccomplice was present during the residential burglary (Pen. Code, § 667.5, subd. (c)(21)); that as to three of the charges, defendant committed the crime while on bail (*id.*, § 12022.1, subd. (b)); that defendant personally inflicted great bodily injury (*id.*, § 12022.7, subd. (e)); and that defendant had suffered three prior prison terms (*id.*, § 667.5, subd. (b)). A jury found defendant guilty of all charges, and found true the

4

allegations that he personally inflicted great bodily injury and that a nonaccomplice was present during the burglary. Defendant's motion for a new trial was denied.

In a bifurcated bench trial, the trial court found true the out-on-bail enhancement allegations and two of the prior prison term conviction enhancement allegations (the third was dismissed on the People's motion).

The trial court sentenced defendant to a total prison term of 18 years eight months. Defendant filed a timely notice of appeal.


ANALYSIS OF POTENTIAL ISSUES

Appellate counsel suggests three legal issues for our review. First, we consider whether the audiotapes of the 911 calls were properly admitted over defendant's trial counsel's objection. An audiotape of a victim's 911 call is admissible hearsay. A statement to a 911 operator is an excited utterance pursuant to Evidence Code section 1240, and under *Crawford v. Washington* (2004) 541 U.S. 36, 68, it is nontestimonial and therefore its admission does not violate a defendant's constitutional rights. (See *People v. Byron* (2009) 170 Cal.App.4th 657, 675-676.)

Second, we consider whether the prosecutor committed prejudicial misconduct when, during closing argument, she argued that domestic violence victims often recant their claims, despite the lack of any such evidence at trial. We need not address the merits of this argument because defendant's trial counsel did not object to the argument. "'As a general rule a defendant may not complain on appeal of prosecutorial misconduct unless in a timely fashion—and on the same ground—the defendant made an assignment of misconduct and requested that the jury be admonished to disregard the impropriety.'" (*People v. Hill* (1998) 17 Cal.4th 800, 820.)

Finally, we consider whether defendant's motion for a new trial was properly denied. The only ground for the motion was the discovery of witnesses whose testimony was not presented at trial. "When a verdict has been rendered or a finding

5

made against the defendant, the court may, upon his application, grant a new trial, in the following cases only: [¶] . . . [¶] . . . When new evidence is discovered material to the defendant, and *which he could not, with reasonable diligence, have discovered and produced at the trial.*" (Pen. Code, § 1181, subd. 8, italics added.) However, all of the witnesses "discovered" were known to defendant and could, with reasonable diligence, have been produced at trial. The trial court did not err in denying the motion for a new trial.

Our review of the record pursuant to *Wende*, *supra*, 25 Cal.3d 436, and *Anders*, *supra*, 386 U.S. 738, including the possible issues suggested by defendant's appellate counsel, has disclosed no reasonably arguable appellate issue. Competent counsel has represented defendant in this appeal.

DISPOSITION

The judgment is affirmed.

FYBEL, J.

WE CONCUR:


O'LEARY, P. J.


BEDSWORTH, J.

6